Orlando SALINAS, Appellant

v.

The STATE of Texas, Appellee.

No. 14–12–00378–CR.

Court of Appeals of Texas, Houston (14th Dist.).

March 6, 2014.

Jani J. Maselli Wood, Houston, for Appellant.

Bridget Holloway, Houston, for Appellee.

Panel consists of Justices BOYCE, JAMISON, and BUSBY.

## SUBSTITUTE MAJORITY OPINION

WILLIAM J. BOYCE, Justice.

Appellant Orlando Salinas's motion for rehearing is overruled; the majority opinion of December 5, 2013 is withdrawn; and the following substitute majority opinion is issued in its place.

Orlando Salinas appeals from his conviction for injury to an elderly person. A jury found him guilty and the trial court sentenced him to five years in prison. Appellant contends that the trial court erred by (1) permitting expert testimony on victim recantation; (2) admitting hearsay testimony under the excited utterance exception; and (3) assessing an unconstitutional court cost against him. *See* Tex. Loc. Gov't Code § 133.102(a)(1) (Vernon Supp. 2013). We reject appellant's contentions and affirm the trial court's judgment.

### BACKGROUND

Appellant was charged with assaulting his 80–year old father, Salvador Salinas. Several witnesses at trial described the assault, including complainant's grandson, Salvador Salinas III, and two of the grandson's friends, Omar Morales and Sean Finch.

The altercation occurred at the complainant's house, where appellant was staying. Appellant and the complainant argued; according to witnesses, appellant shoved the complainant to the floor and got on top of him. Appellant also shoved the complainant against a wall. After the physical confrontation, the complainant was bleeding from a wound on his arm. Several witnesses said the wound looked like a bite mark. The complainant's other son, Salvador Salinas, Jr., arrived at the home during the dispute and called 9–1–1.

Houston Police Officer Christopher Castellani testified that he arrived on the scene about six minutes after Salinas, Jr. called 9–1–1. Castellani described the complainant as being "visibly shocked," "dazed," "very upset," and "very sad." Castellani observed that the complainant was bleeding from lacerations on his arm and called for EMS to treat the wound.

Castellani testified that the complainant initially did not want to speak about what happened. As the conversation progressed, the complainant explained that he had argued with appellant and received the wounds on his arm when appellant bit him twice. According to Castellani, the complainant stated that appellant hit him. Officer Chris Palla, who also arrived on scene soon after the 9–1–1 call, testified that the complainant claimed appellant had "jumped on him." The trial court overruled hearsay objections to both officers' testimony.

At trial, the complainant testified that appellant did not hit or bite him during the argument. The complainant denied telling Officer Castellani that appellant had assaulted him.

The State thereafter called an employee of the Harris County District Attorney's Office, Kapriva Johnson Hutchinson, as an expert regarding family violence. Hutch-

inson, a caseworker in the Family Criminal Law Division, testified that she had both a bachelor's and a master's degree in social work and had attended numerous "conferences, trainings and seminars where domestic violence was the [main] topic." She has attended seminars relating to minimization and recantation by domestic abuse victims and reviewed literature on those topics. Hutchinson detailed her experience working with domestic violence victims and her familiarity with their tendency to minimize or recant abuse allegations. Appellant objected to this testimony on relevance grounds, and on grounds that Hutchinson lacked the necessary qualifications to testify. The trial court overruled these objections and permitted Hutchinson to opine that it was common for domestic abuse victims to recant or minimize allegations.

The charge permitted the jury to find appellant guilty of causing injury to an elderly person if it determined appellant bit the complainant or struck him with a hand. After the jury found appellant guilty, the trial court sentenced him to five years in prison.

The trial court assessed court costs against appellant. In the certified bill of costs, $133 was assessed against appellant as a "consolidated court cost." Appellant complained to the trial court regarding these costs in a motion for new trial, motion in arrest of judgment, and a hearing on the motions. The trial court overruled these objections.

#### ANALYSIS

### I. Expert Testimony

Appellant contends that the trial court erred by permitting Hutchinson to testify as an expert because she was not shown to be qualified and her testimony was not relevant. The parties examined Hutchinson extensively on voir dire regarding her qualifications. Her testimony before the jury was relatively brief; it consisted almost entirely of a statement of her qualifications, and her opinion that domestic abuse victims frequently recant or minimize their accusations. She did not offer an opinion specifically regarding the complainant's testimony or any other facts of this case.

■■■ We review the admission of expert testimony under an abuse of discretion standard. *Coble v. State,* 330 S.W.3d 253, 272 (Tex.Crim.App.2010). A court abuses its discretion if it acts without reference to any guiding rules and principles. *Montgomery v. State,* 810 S.W.2d 372, 380 (Tex.Crim.App.1990). The trial court is given a "limited right to be wrong" as long as it does not act in an arbitrary or capricious manner. *Id.* We will not reverse unless we determine that the trial court's ruling was so wrong as to fall outside the zone within which reasonable people might disagree. *Tillman v. State,* 354 S.W.3d 425, 435 (Tex.Crim.App.2011).

■■■ Texas Rule of Evidence 702 allows a witness qualified by knowledge, skill, experience, training, or education to testify on scientific, technical, or other specialized subjects if the testimony would assist the trier of fact in understanding or determining a fact issue. Before admitting expert testimony under Rule 702, the trial court must be satisfied that (1) the witness qualifies as an expert by reason of her knowledge, skill, experience, training, or education; (2) the subject matter is an appropriate one for expert testimony; and (3) admitting the expert testimony will actually assist the factfinder in deciding the case. *Davis v. State,* 329 S.W.3d 798, 813 (Tex.Crim.App.2010), *cert. denied,* —— U.S. ——, 132 S.Ct. 128, 181 L.Ed.2d 50 (2011). These requirements are commonly referred to as qualifications, reliability, and

relevance. *Id.* (citing *Vela v. State,* 209 S.W.3d 128, 131 (Tex.Crim.App.2006)). Each requirement raises distinct questions and issues, and an objection based on one requirement does not preserve error as to another. *Shaw v. State,* 329 S.W.3d 645, 655–56 (Tex.App.-Houston [14th Dist.] 2010, pet. ref'd).

■ Appellant first challenges Hutchinson's qualifications because she had only "one frame of reference" and "one type of training and belief" after working for 12 years in the district attorney's office. Appellant cites no authority suggesting that a witness must work with more than one employer to qualify as an expert. In any event, Hutchinson stated that she has worked in internships in a group home, a hospital, and another health care facility. She testified that she has two degrees in social work and has attended numerous "conferences, trainings and seminars where domestic violence was the [main] topic," along with seminars relating to minimization and recantation by domestic abuse victims. She also has reviewed literature on these topics.

The record gives no indication that Hutchinson's education, training, and experience were too limited or "one-sided" to prevent her from qualifying as an expert. Hutchinson detailed her experience working with victims of domestic violence and dealing with their tendency to minimize or recant allegations of abuse. On this record, the trial court acted within its discretion in determining that Hutchinson was qualified to testify as an expert. *See Duckett v. State,* 797 S.W.2d 906, 917, 920 (Tex.Crim.App.1990) (social worker was qualified to testify as an expert regarding why victim of sexual abuse changed her testimony and appeared confused), *disapproved on other grounds by Cohn v. State,* 849 S.W.2d 817, 819 (Tex.Crim.App.1993).

Appellant additionally complains that Hutchinson "could not remember any classes or seminars or even books she had read about the subject." This appears to be a misreading of the record. Hutchinson testified that she has attended seminars and reviewed research articles on recantation; she was not asked to name any specific classes, seminars, or books.

■ Appellant makes no specific arguments on appeal challenging the relevance of Hutchinson's testimony. Hutchinson testified that it is common for domestic abuse victims to recant or minimize allegations of abuse. Other evidence suggested that the complainant in this case had made allegations against appellant, but complainant denied at trial that appellant had assaulted him. The trial court did not err in determining that Hutchinson's testimony was relevant to understanding why the complainant may have changed his account of the incident that led to appellant's prosecution. *See Duckett,* 797 S.W.2d at 920 (social worker's testimony regarding reasons for sexual abuse victim's changed testimony was relevant); *Fielder v. State,* 756 S.W.2d 309, 319 (Tex.Crim.App.1988) (psychologist's testimony regarding reasons for remaining in an abusive marriage was relevant); *Scugoza v. State,* 949 S.W.2d 360, 363 (Tex.App.-San Antonio 1997, no pet.) (testimony on recantation from program director of battered women's shelter was relevant).

## II. Hearsay Statements

■ Appellant contends that the trial court erred in permitting Castellani to testify regarding the complainant's statements made shortly after the alleged assault occurred. Appellant raised several hearsay objections to this testimony; it appears that the trial court overruled these objections under the excited utter-

ance exception. *See* Tex.R. Evid. 801, 802, and 803(2).

We review a trial court's ruling on the admission or exclusion of evidence for an abuse of discretion. *Tillman*, 354 S.W.3d at 435. A trial court abuses its discretion only if its decision "lies outside the zone of reasonable disagreement." *Martinez v. State*, 327 S.W.3d 727, 736 (Tex.Crim.App.2010).

In determining whether a statement falls within the excited utterance exception, a court must assess whether (1) the statement was the product of a startling event that produced a state of nervous excitement; (2) the declarant was dominated by the excitement of the event; and (3) the statement related to the circumstances of the startling event. *Jackson v. State*, 110 S.W.3d 626, 633 (Tex. App.-Houston [14th Dist.] 2003, pet. ref'd). The court also may consider other factors such as the amount of time elapsed and whether the statement was a response to a question. *Salazar v. State*, 38 S.W.3d 141, 154 (Tex.Crim.App.2001). The most important consideration is whether the declarant was still dominated by the emotions, excitement, fear, or pain of the event when the statements were made. *King v. State*, 953 S.W.2d 266, 269 (Tex.Crim.App. 1997).

In support of his contention that complainant's out-of-court statements were inadmissible, appellant emphasizes that these statements were prompted by Castellani's questioning; complainant was sitting calmly in a chair when the statements were made; complainant already had spoken to other officers and was slow to "open up" to Castellani; complainant stated that he did not remember much about the altercation; and the statements were clear and chronological.

While these factors arguably weigh against admission, other circumstances support application of the excited utterance exception in this case.

Castellani testified that he arrived on the scene within six minutes of the 9–1–1 call; although it is not clear how much time elapsed before Castellani spoke to complainant, the trial court reasonably could have concluded that no significant amount of time elapsed between Castellani's arrival and his conversation with complainant. Castellani described the complainant as being "visibly shocked," "dazed," "very upset," and "very sad." Castellani also observed that complainant was bleeding from lacerations on his arm. These factors put this case well within the range of circumstances justifying application of the excited utterance exception. *See, e.g., Vinson v. State*, 221 S.W.3d 256, 260–61 (Tex.App.-Houston [1st Dist.] 2006) (exception applied because complainant was visibly shaken and injured after attack), *rev'd on other grounds*, 252 S.W.3d 336 (Tex.Crim.App. 2008); *Hudson v. State*, 179 S.W.3d 731, 737 (Tex.App.-Houston [14th Dist.] 2005, no pet.) (exception applied because complainant was "visibly shaken and highly upset when [officers] arrived within five minutes of receiving assault call").

Accordingly, the trial court acted within its discretion in overruling the hearsay objection.

## III.  Consolidated Court Cost

Appellant contends that the trial court's assessment of a "consolidated court cost" against him violates the Texas Constitution.

The trial court assessed the cost pursuant to section 133.102(a)(1) of the Texas Local Government Code, which mandates that a person convicted of a felony must pay $133 "as a court cost, in addition to all

other costs." *See* Tex. Loc. Gov't Code § 133.102(a)(1). The collected amounts must be remitted to the state comptroller, who in turn must allocate this money to fourteen specified "accounts and funds:"

(1) abused children's counseling

(2) crime stoppers assistance

(3) breath alcohol testing

(4) Bill Blackwood Law Enforcement Management Institute

(5) law enforcement officers standards and education

(6) comprehensive rehabilitation

(7) operator's and chauffeur's license

(8) criminal justice planning

(9) an account in the state treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A & M University

(10) compensation to victims of crime fund

(11) emergency radio infrastructure account

(12) judicial and court personnel training fund

(13) an account in the state treasury to be used for the establishment and operation of the Correctional Management Institute of Texas and Criminal Justice Center Account, and

(14) fair defense account.

*Id.* §§ 133.102(b), (e) (Vernon Supp.2013). Subsection (e) provides that the designated funds "may not receive less than" certain specified percentages of the collected amounts. *Id.* Section 133.058 permits a municipality or county to retain 10 percent of collected amounts as a "service fee."

Appellant maintains that section 133.102(a)(1) is facially unconstitutional under the separation of powers clause of the Texas Constitution:

DIVISION OF POWERS; THREE SEPARATE DEPARTMENTS; EXERCISE OF POWER PROPERLY ATTACHED TO OTHER DEPARTMENTS. The powers of the Government of the State of Texas shall be divided into three distinct departments, each of which shall be confided to a separate body of magistracy, to wit: Those which are Legislative to one; those which are Executive to another, and those which are Judicial to another; and no person, or collection of persons, being of one of these departments, shall exercise any power properly attached to either of the others, except in the instances herein expressly permitted.

Tex. Const. art. II, § 1.

According to appellant, the uses specified in section 133.102(e) for the court cost collected under section 133.102(a)(1) include uses that are not properly characterized as "costs of court;" therefore, appellant contends that section 133.102(a)(1) impermissibly requires the judicial branch to perform an executive function by collecting a tax.

Appellant argues that only two of the uses specified in section 133.102(e) "have a direct link to the function of criminal court system operations . . . ." He says these two permissible uses are the "judicial and court personnel training fund" and the "fair defense account." *See* Tex. Loc. Gov't Code § 133.102(e)(12), (14). Appellant says the remaining 12 uses specified in section 133.102(e) "are unrelated to the criminal court system." He thus contends that the statute impermissibly compels courts to collect a "tax" in violation of separation of powers principles "[b]ecause the consolidated court cost is primarily used to fund non-court programs."

Appellant raised this contention in the trial court in a motion for new trial,

motion in arrest of judgment, and at a hearing on these motions. But the trial court did not rule on the motion in arrest of judgment; nor is it clear that either motion is an appropriate vehicle for making a complaint regarding court costs. *See Landers v. State*, 402 S.W.3d 252, 254–55 (Tex.Crim.App.2013) (reserving question of whether a motion for new trial is an appropriate vehicle); *Crittendon v. State*, 923 S.W.2d 632, 634 (Tex.App.-Houston [1st Dist.] 1995, no pet.) ("A motion in arrest of judgment is essentially a post-trial motion to quash the indictment."); *see also Landers*, 402 S.W.3d at 256 (Keller, P.J., concurring) (discussing possible alternative method of challenging costs); *Thomas v. State*, No. 01–12–00487–CR, —— S.W.3d ——, ——, 2013 WL 1163980, at *2 (Tex. App.-Houston [1st Dist.] March 21, 2013, no pet.) (same). Under the circumstances of this case, however, we conclude that the substantive grounds appellant relies upon and the relief sought were brought to the trial court's attention timely and with adequate specificity. *See* Tex.R.App. P. 33.1(a)(1)(A). We therefore consider the substance of appellant's motions rather than their titles. *Ex parte Caldwell*, 58 S.W.3d 127, 130 (Tex.Crim.App.2000).

■ As a threshold matter, we reject the State's contention that this issue is not ripe because the Texas Department of Criminal Justice has not attempted to collect the costs from appellant. The trial court assessed costs against appellant, and a bill of costs has issued. Appellant therefore owes the costs regardless of whether an attempt to collect has been made. *See* Tex.Code.Crim. Proc. 103.001 (Vernon 2006) (cost is not payable until a written bill is produced or is ready to be produced); *Johnson v. State*, 389 S.W.3d 513, 516 (Tex.App.-Houston [14th Dist.] 2012, pet. granted) (costs issue was ripe where trial court had ordered defendant to pay costs of a certain amount in the judgment). This is not an abstract, hypothetical or contingent issue.

■ In addressing a constitutional challenge, this court "must begin with the presumption that the statute is valid and that the Legislature did not act arbitrarily or unreasonably in enacting it." *State v. Rosseau*, 396 S.W.3d 550, 557 (Tex.Crim. App.2013). The party challenging the statute "has the burden to establish its unconstitutionality." *Id.* "[T]o prevail on a facial challenge, a party must establish that the statute always operates unconstitutionally in all possible circumstances." *Id.*

Appellant principally relies on *Ex parte Carson*, 143 Tex.Crim. 498, 159 S.W.2d 126, 127 (1942), to meet this burden. *Carson* invalidated a statute requiring the collection of $1 in costs in civil and criminal cases in certain counties to fund law libraries in those counties. *Id.* The Court of Criminal Appeals invalided the statute because (1) the $1 cost was "neither necessary nor incidental to the trial of a criminal case [and thus was] not a legitimate item to be so taxed" against a criminal defendant; (2) the statute was a local or special law, which the state legislature was not authorized to enact; and (3) collection of this cost only from defendants in certain counties was discriminatory. *Id.* at 127, 129–30.

There is room to discuss whether *Carson* can bear the weight appellant would have it carry. *Carson's* passing discussion of whether the $1 fee constitutes a "tax" is both abbreviated and bereft of citations to supporting authority. The opinion's analysis focuses primarily on whether this fee, which was assessed only in certain counties, "is unconstitutional as being a local or special law passed in contravention of Section 56 of Article 3 of the Constitution of the State of Texas . . . ." *Id.*

In any event, appellant's facial constitutional challenge to section 133.102(a)(1) fails for at least two reasons.

The first reason is that appellant failed to satisfy his burden to show that the statute is invalid in all possible applications because he has not established what the funds designated in section 133.102(e) actually do. Appellant draws inferences from the titles of these funds, makes assumptions about the uses to which the fees are put, and invites us to do the same. We decline this invitation and refrain from assuming, based on fund titles alone, that all uses to which portions of the fees could be put are insufficiently related to the court system.

The second reason is that appellant fails to address severability principles when he argues that the consolidated court cost amounts to an impermissible "tax" because it is "primarily used to fund non-court programs."

It is useful in addressing severability to focus on the precise remedy appellant seeks from this court. Appellant is not seeking to prevent the distribution of court costs to particular funds that he deems to be insufficiently court-related, and to direct those sums instead to funds that he finds unobjectionable. Rather, appellant asks this court to foreclose collection of section 133.102(a)(1)'s $133 court cost in its entirety even though at least some of the designated uses for this sum are, by appellant's own admission, permissible.

Section 133.102 does not contain a severability provision. In this circumstance, the Code Construction Act provides as follows: "[I]f any provision of the statute or its application to any person or circumstance is held invalid, the invalidity does not affect other provisions or applications of the statute that can be given effect without the invalid provision or application, and to this end the provisions of the statute are sever-

able." Tex. Gov't Code Ann. § 311.032(c) (Vernon 2013); *see also Salas v. State,* 365 S.W.2d 174, 175 (Tex.Crim.App.1963).

Appellant seeks to invalidate section 133.102(a)(1)'s court cost in its entirety based on the identity of the recipient funds designated in section 133.102(e). He asked the trial court to reform the judgment ordering appellant to pay $304 in court costs, and to reduce that amount by $133 corresponding to the court cost mandated by section 133.102(a)(1). But appellant does not contend that all of the recipient funds designated in section 133.102(e) are impermissible. To the contrary, appellant concedes that directing a portion of the fee to the "judicial and court personnel training fund" and the "fair defense account" as specified in subsection 133.102(e) is permissible. He states: "Money used to train judges and court personnel serves to better prepare the government actors involved in the trial of criminal cases." He further states that a program for payment of court-appointed attorneys to represent indigent defendants in the trial of criminal cases "is necessary to the trial of a criminal case."

Even if it is assumed solely for argument's sake that at least some of the fund recipients identified in subsection 133.102(e) are invalid, appellant identifies no reason why section 133.102(a)(1)'s $133 court cost cannot be collected and distributed in accordance with severability principles to the admittedly appropriate funds specified in subsections 133.102(e)(12) and (14). This circumstance involving a single amount used for multiple purposes distinguishes this case from *Carson,* 159 S.W.2d at 127, which involved a single amount designated for a single impermissible purpose.

The specified percentages in section 133.102(e) set only a minimum or floor

amount that must be distributed to particular funds.[1] Therefore, the statute as written can accommodate distribution of larger amounts to a smaller number of permissible recipients if other recipients are deemed to be impermissible. *See* Tex. Gov't Code Ann. § 311.032(c); *see also Road Dist. No. 4, Shelby Cnty. v. Allred,* 123 Tex. 77, 68 S.W.2d 164, 171 (Tex.Com. App.1934) (orig. proceeding) (provision of statute impermissibly donated state funds amounting to a "mere gratuity" to road district; invalidity of this provision's designated use of funds did not invalidate statute's other provisions allowing distribution of funds for permissible purposes because "the unconstitutionality of section 12 does not render the entire act void. It is a workable act with section 12 stricken."); *Ex Parte Mehlman,* 127 Tex.Crim. 257, 75 S.W.2d 689, 691 (Tex.Crim.App.1934) ("If that part of the act relating to the appropriation of the receipts should be held invalid—and we disclaim any intention of so holding—the remainder of the act would not be affected.").

Because the admittedly valid uses are severable and are not foreclosed by other assertedly invalid uses to which the challenged court cost is put, appellant has not established that section 133.102(a)(1)'s $133 court cost always operates unconstitutionally as a tax or that it must be deleted in its entirety from the trial court's judgment.

1. The dissent contends that subsection (e)'s "not ... less than" language applies only to fees collected in connection with offenses committed before January 1, 2004. Nothing in subsection (e) expressly makes this language applicable only to pre–2004 offenses. Assuming the dissent's reading to be a plausible reading of a subsection that is, as the dissent observes, "not a model of statutory clarity," the appellant's constitutional challenge still fails under the longstanding precept that statutes susceptible to multiple constructions will be interpreted so as to render them constitutional. *See, e.g., Newsom v. State,* 372 S.W.2d 681, 683 (Tex.Crim.App. 1963). In keeping with this precept, it is appropriate to read subsection (e)'s "not ... less than" language to apply to fees collected in connection with offenses committed on or after January 1, 2004.

1. The version of the statute relevant to this case listed the recipient funds and their required allocation percentages as follows:

## CONCLUSION

We overrule appellant's issues and affirm the trial court's judgment.

JAMISON, J., concurring and dissenting.

MARTHA HILL JAMISON, Justice, concurring and dissenting.

I concur with the majority as to the resolution of appellant's first two issues. However, I would find section 133.102(a)(1) of the Texas Local Government Code to be unconstitutional on its face. Specifically, I would find that none of the funds mentioned in the statute meet the *Carson* test, despite appellant's attempted concession on appeal, and the court costs cannot be reallocated. Because the majority holds otherwise, I respectfully dissent.

### *Consolidated Court Cost*

In addition to the numerous assessments associated with the actual cost of a convicted person's trial; *see, e.g.,* Texas Code of Criminal Procedure sections 102.001–102.022 and Texas Government Code section 102.021; the Texas Legislature has, in section 133.102(e), assessed a "sin tax"—a standard fee to be paid by all convicted criminals. This fee, denominated as a "court cost," applies regardless of any costs actually expended in the trial. The statute requires the consolidated cost to be allocated according to the percentages provided in the statute. Tex. Loc. Gov't Code § 133.102(c).[1] Appellant contends that the

trial court's assessment of a "consolidated court cost" against him violated the separation of powers clause of the Texas Constitution. Tex. Const. art. II, § 1. Appellant further contends resolution of this case is governed by the Court of Criminal Appeals opinion in *Ex parte Carson*, 143 Tex.Crim. 498, 159 S.W.2d 126 (1942). I agree. The majority suggests that *Carson* "cannot bear the weight" of appellant's argument, *see ante* p. 326; however, I believe that *Carson*, though imperfect, is binding precedent on this court. *Cf. Reed v. Buck*, 370 S.W.2d 867, 870–871 (Tex. 1963) (explaining that because certain cases had "not been cited in recent years[, the lower court] was of the opinion that these ancient cases, like old soldiers, had just faded away. [But these] are decisions of this Court and unless there is some good reason for overruling them, they should not be disregarded.").

The fee which the *Carson* Court held unconstitutional, as neither necessary nor incidental to the trial, was a $1 library fee to be collected in certain counties expressly for the creation and maintenance of law libraries in those counties to be made available for judges and attorneys. 159 S.W.2d at 127. In discussing its reasoning, the *Carson* Court unfortunately did not cite any particular provision of the constitution that it found to be violated by the law library assessment. The Court, however, called the $1 assessment a "tax" and noted that there was a conflict among other jurisdictions regarding whether such charges could be considered legitimate costs of court. *Id.* at 127.[2] Still today, there exists a split among jurisdictions as to whether the "costs" for items not directly related to trial of a defendant's case can be assessed against a defendant without violating constitutional clauses mandating the separation of powers among branches of government. *Compare State v. Claborn*, 870 P.2d 169, 171 (Okla.Crim.App. 1994) (holding court cost not reasonably related to costs of administering criminal justice system renders courts "tax gatherers in violation of separation of powers"), *and People v. Barber*, 14 Mich.App. 395, 165 N.W.2d 608, 613 (1968) (explaining legislature could not circumvent the explicit provision of the constitution by placing the label "costs" on items that were clearly not costs of court), *with Broyles v. State*, 285 Ark. 457, 688 S.W.2d 290, 292 (1985) (hold-

| | | |
|---|---|---|
| (1) | abused children's counseling | 0.0088 percent; |
| (2) | crime stoppers assistance | 0.2581 percent; |
| (3) | breath alcohol testing | 0.5507 percent; |
| (4) | Bill Blackwood Law Enforcement Management Institute | 2.1683 percent; |
| (5) | law enforcement officers standards and education | 5.0034 percent; |
| (6) | comprehensive rehabilitation | 9.8218 percent; |
| (7) | operator's and chauffeur's license | 11.1426 percent; |
| (8) | criminal justice planning | 12.5537 percent; |
| (9) | an account in the state treasury to be used only for the establishment and operation of the Center for the Study and Prevention of Juvenile Crime and Delinquency at Prairie View A & M University | 1.2090 percent; |
| (10) | compensation to victims of crime fund | 37.6338 percent; |
| (11) | emergency radio infrastructure account | 5.5904 percent; |
| (12) | judicial and court personnel training fund | 4.8362 percent; |
| (13) | an account in the state treasury to be used for the Establishment and operation of the Correctional Management Institute of Texas and Criminal Justice Center Account and | 1.2090 percent; |
| (14) | fair defense account | 8.0143 percent. |

2. While noting the existence of a conflict among other jurisdictions, the Court in *Carson* did not cite, much less specifically discuss, any cases from other jurisdictions, stating they were all "more or less based upon an arbitrary conclusion." 159 S.W.2d at 127.

ing that a cost charged to a criminal defendant convicted of driving while intoxicated to support programs relating to drunken driving, detoxification services, and alcohol and drug abuse rehabilitation was constitutional since funds go to agencies created to keep the highways safe from drunk drivers); *and State v. Young*, 238 So.2d 589, 589–90 (Fla.1970) (holding that a statute imposing a one dollar "court cost" for law enforcement on every person convicted of a crime was not a violation of the separation of powers doctrine because it is reasonable that one convicted of a crime "should be made to share in the improvement of agencies that society has had to employ in defense against the very acts for which he has been convicted").[3] It is therefore likely that the *Carson* Court based its decision on the same provision relied upon by appellant in the present case: the separation of powers clause contained in article II, section 1 of the Texas Constitution.

Regardless of the opinion's legal underpinnings, the *Carson* Court clearly favored a strict definition of permissible "court costs" in a criminal case, stating that the opposing view,

would lead into fields of expenditures which may as well include the cost of the court houses, the automobiles which officers use to apprehend criminals and even the roads upon which they ride. If something so remote as a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges and even the endowments of the schools which they attend.

159 S.W.2d at 127.[4]

Applying the Court of Criminal Appeals' strict standard to the statute at issue in the present case, I would hold that none of the fourteen programs funded by collection of the consolidated court cost from convicted defendants, pursuant to section 133.102, pass constitutional muster.[5] Certainly, there is no indication in the record that any of the funded items represent actual costs incurred in appellant's trial. More importantly, none of the fourteen is less remote in its relationship to the court proceedings in this case than was the funding

---

**3.** By citation to these cases, I am not suggesting that courts in these jurisdictions would or would not find the consolidated court cost in this case constitutional or unconstitutional. I cite them merely to indicate that there is a lack of uniformity regarding how such costs are viewed.

**4.** The Court of Criminal Appeals has recognized a distinction between fines imposed in Chapter 12 of the Texas Penal Code and court costs intended as nonpunitive recoupment of judicial resources expended in connection with the trial of the case. *See Weir v. State*, 278 S.W.3d 364, 365–66 (Tex.Crim.App. 2009). Under the analysis in *Weir*, costs assessed pursuant to section 133.102 are clearly nonpunitive in nature. The statute at issue in *Weir*, Texas Government Code section 102.021, and the statute at issue here, section 133.102, are drafted in very similar fashions.

However, section 102.021 lists actual items of cost in criminal trials (*e.g.*, a fee for services of prosecutor and fees for executing or processing an arrest warrant), whereas section 133.102 attempts to fund programs less directly related, if at all, to appellant's trial.

**5.** My analysis in this case should not be considered a reflection on the relative merits of the programs funded under section 133.102. Moreover, I recognize that making convicted criminals pay for certain programs, rather than obtaining funding through other means of revenue, may seem an attractive, expedient, and fair option. Nonetheless, this intermediate court of appeals is bound to follow the precedent established by the Court of Criminal Appeals. *See* Tex. Const. art. V, § 5(a); *Purchase v. State*, 84 S.W.3d 696, 701 (Tex.App.-Houston [1st Dist.] 2002, pet. ref'd).

for a law library to be used by judges and attorneys in *Carson.*[6]

The majority holds that appellant failed to overcome the presumption of section 133.102's constitutionality because he failed to establish what the funds designated in section 133.102(e) "actually do" beyond the statutory language, that is, the titles given the funds by the Legislature. However, if the meaning of the statutory language is unambiguous, we must adopt the interpretation supported by the plain meaning of the provision's words. *See Sowell v. Int'l Interests, LP,* 416 S.W.3d 593, 596 (Tex. App.-Houston [14th Dist.] Aug. 29, 2013, pet filed) (citing *St. Luke's Episcopal Hosp. v. Agbor,* 952 S.W.2d 503, 505 (Tex. 1997)). I would hold that appellant has met his burden concerning whether the fourteen funds meet the *Carson* test of "necessary or incidental."[7]

In his reply brief, appellant provides a fairly detailed analysis of each funded item, including references to governing statutes where discernable. Appellant concedes on appeal that amounts collected and distributed to two of the programs listed in section 133.102—number 12, regarding the judicial and court personnel training fund, and number 14, concerning contribution to the "fair defense account"—may be sufficiently related to the operation of courts as to not violate the separation of powers clause. While I agree that these may be the two programs most closely related to the court proceedings and I understand why appellant's counsel would want them included in the distribution of costs, I do not agree that these items should be excepted. Regarding the training fund, as the excerpt above illustrates, the *Carson* Court specifically discounted the notion that funds for court training can be a legitimate cost of court to be charged to a convicted defendant. 159 S.W.2d at 127 ("If something so remote as

---

**6.** The State suggests that the consolidated court costs assessed in this case are constitutional because they totaled less than the true costs of appellant's prosecution. Even if there were evidence to support the State's position, *Carson* does not sanction such an analysis. As discussed, the *Carson* court held that a $1 court cost was unconstitutional because it was "neither necessary nor incidental to the trial of a criminal case." 159 S.W.2d at 127.

**7.** Appellant presented the trial court with a newspaper article exposing the collection of tens of millions of dollars from convicted criminals for use on programs wholly unrelated to their trials or crimes. *See* Eric Dexheimer, *Hard-up defendants pay as state siphons court fees for unrelated uses,* Austin–American Statesman, March 3, 2012. The majority does not suggest what else appellant could have done apart from discussing the language of the statutes themselves and the published results of investigative reporting. Requiring a defendant to divine the inner workings of fourteen different governmental programs in order to contest a $133 fee is an

onerous burden and one that practically guarantees the unconstitutional statute will go unchallenged. I do not view the appellant's burden to be so great.

The language of section 133.102 itself proves its own undoing, providing funding for abused children's counseling (although there is no allegation of such abuse in this case), crime stoppers' assistance (even though there is no indication of crime stoppers' involvement in this case), breath alcohol testing (although there was no evidence of any such testing occurring in this case), driver's licenses (although no issue related to driving was involved in this case), establishment of a center to study juvenile crime (even though no juvenile was involved in this case), and an account for emergency radio infrastructure (even though there is no hint in this case that such was at issue here). Most of the remaining funded programs are clearly related to the training and education of judicial system officials and employees, in direct contravention of *Carson.* Perhaps these are all laudable programs, but they are improperly and unconstitutionally funded through section 133.102.

a law library may be properly charged to the litigant on the theory that it better prepares the courts and the attorneys for the performance of their duties, it occurs to us that we might as logically tax an item of cost for the education of such attorneys and judges . . . .").

By statute, the fair defense account may only be appropriated to (1) the Texas Indigent Defense Commission for the purpose of implementing Chapter 79 of the Government Code, which governs administration of the commission, and (2) the office of capital writs for implementing Chapter 78, Subchapter B of the Code, which establishes the office. Tex. Gov't Code § 79.031. Although it appears some of the funds that go to the fair defense account may ultimately help provide counsel for indigent criminal defendants, it does not appear that this is the sole use that can be made for these funds.[8] *See, e.g.,* Tex. Gov't Code §§ 79.019 (authorizing commission funds to be used to reimburse board members' expenses); 79.035 (requiring commission to collect information from counties and issue reports concerning various facets of indigent representation in Texas); 70.039 (requiring commission to collect information from law school clinics and programs and issue exoneration reports). It therefore cannot be said that either the training fund or the fair defense account are necessary or incidental expenses in the trial of appellant's criminal case. *See Carson,* 159 S.W.2d at 130.[9]

The majority suggests that even if funding certain of the fourteen items was determined to be unconstitutional, section 133.102 need not be stricken in its entirety because the $133 collected could simply be allocated to any remaining constitutional uses, regardless of the specific percentages identified in the section (*see supra* n. 4). According to the majority, the specified percentages "set only a minimum or floor amount that must be distributed to particular funds." *See ante,* pp. 327–28. Although the majority is not explicit, it appears to base this conclusion on language contained in subsection (e), which provides "the account or fund may not receive less than the following percentages." In this regard, the majority appears to misread what is not a model of statutory clarity.

Section 133.102 actually provides different instructions for allocation, depending on whether the offense in question was committed before or after January 1, 2004. Under subsection (c), "The money collected under this section as court costs imposed on offenses committed on or after January 1, 2004, ***shall be allocated according to the percentages provided in Subsection (e).***" (Emphasis added). Appellant clearly committed the charged offense after January 1, 2004, so the $133 collected from him pursuant to the section must be allocated according to the expressly listed percentages.[10]

---

**8.** Appellant additionally complains in his brief that funds intended for the fair defense account have instead been used to balance the State's budget. I neither consider nor take a position on this complaint.

**9.** Code of Criminal Procedure article 26.05(g) allows the trial court to order a defendant to repay the cost of court-appointed legal counsel that the court finds the defendant is able to pay. Tex.Code Crim. Proc. 26.05(g). However, it does not appear in the present case that the trial court made a determination

under article 26.05(g). *See Cates v. State,* 402 S.W.3d 250, 251–52 (Tex.Crim.App.2013).

**10.** Under subsection (d), money collected on offenses committed before January 1, 2004 is to be distributed using historical data so that each account or fund receives the amount it would have received had the "costs" for the accounts and funds been collected and reported separately. Subsection (e) actually repeats this language from subsection (d) before adding the clause on which the majority apparently relies: "except that the account or fund

Moreover, there is no provision in section 133.102 authorizing or otherwise supporting reallocation of funds intended for one program to another program. The section, in fact, contains no provisions for severability in the event sections are determined to be unconstitutional, and the majority errs in injecting inapplicable severability rules into the statute. Under the circumstances presented in this case, the statute requires $133 be gathered and distributed according to specified percentages. Period. Because the statute cannot be salvaged by severing constitutionally-funded programs from those not properly funded, the statute is facially unconstitutional even if certain of the listed programs could be constitutionally funded through court costs assessed against criminal defendants.

Regardless, as stated, under the Court of Criminal Appeals opinion in *Carson*, none of the fourteen items funded under Local Government Code section 133.102 constitute a cost necessary or incidental to the trial of a criminal case. *Id.* These are therefore not legitimate items to be assessed against criminal defendants. Accordingly, I would sustain appellant's first issue and hold that section 133.102 is unconstitutional and the $133 must be deleted from the trial court's judgment. Because the majority did not so hold, I respectfully dissent. I concur in the remainder of the majority's holdings and analysis.

may not receive less than the following percentages." This language, therefore, appears to refer to money collected on offenses committed before January 1, 2004, and not those committed on or after that date, as is the case with appellant's offense.